**In re Bruce L. HUDSON, applicant for admission to the Delaware Bar.**

Supreme Court of Delaware.

Submitted April 10, 1979.

Decided April 27, 1979.

May 1, 1979.

Richard H. Schliem, III, Wilmington, for petitioner.

William Poole, Wilmington, for Bd. of Bar Examiners of the State of Delaware.

Before DUFFY, QUILLEN and HORSEY, JJ.

PER CURIAM:

In this proceeding, Bruce L. Hudson (petitioner) seeks review of a decision by the Board of Bar Examiners (Board) refusing to certify him as qualified for admission to the Bar of the State of Delaware.

I

Admission to the Bar of Delaware is governed by the Supreme Court. *Petition of Golby*, Del.Supr., 375 A.2d 1049, 1050 (1977); *Rule 52.* Cf. *Leis v. Flynt*, —— U.S. ——, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979).

The application and testing procedures are administered by the Board, Board of Bar Examiners Rule *BR–52*, which is appointed by the Court. *Rule 51.*

In his petition, Hudson alleges, among other things, that he sat for the Delaware Bar Examination in July 1978 and that, five months prior thereto, he had passed the Bar Examination in Pennsylvania and had been admitted to practice there in May 1978. He says that, based on his performance during the testing in Delaware and in Pennsylvania, he has demonstrated minimal competence to practice law in this State. The Board's position is that Hudson failed the Delaware Examination and is ineligible for admission under our standards.

## II

Hudson tacitly concedes that, prior to the July 1978 Examination, the Board had publicly announced the testing and minimum grading requirements for certification as qualified for admission to the practice of law. The minimum standards for satisfactory completion of the Examination are stated in *BR–52.4(c)*, which provides:

"An applicant shall be deemed to have passed the bar examination by any one of the following minimum standards:

(i) A scaled score of 130 on the MBE * and an average of 65.0 on all the essay questions on the bar examination; or

(ii) A scaled score of 155 on the MBE without regard to the score on the essay questions on the bar examination; or

(iii) An average of 75.0 on all the essay questions on the bar examination without regard to the score on the MBE."

In addition, every applicant must pass a separate examination on Legal Ethics by achieving a score of not less than 65. *BR–52.3.*

---

* "MBE" is the Multistate Bar Examination which is administered on a national basis by the National Conference of Bar Examiners. All

Hudson received the following scores in the July 1978 Examination: Ethics—76.5; MBE—153; Essay—61.08. Thus, the record conclusively shows that Hudson achieved the minimum requirements for certification in both the Ethics and MBE examinations, but not in the Essay examination.

Hudson makes several contentions. He says that he has demonstrated the minimum competence to practice law in this State and that the Board was arbitrary and unfair in refusing to recognize his February MBE 1978 score for that purpose. He also contends that he was entitled to a hearing before the Board.

■ The thrust of Hudson's argument in this: he wants Delaware to accept for admission purposes the MBE score which he received while sitting for the Pennsylvania Examination in February 1978 and/or he wants that score averaged with his Delaware score. If Delaware were to accept the Pennsylvania result, in which Hudson received a score of 160, then, of course, he would be regarded as having qualified for admission without reference to his score on the Essay examination (which he failed). See *BR–52.4(c)(ii).* Or by averaging the two scores (of 160 in Pennsylvania and 153 in Delaware), the result of 156.5 would also qualify him without regard to his Essay score.

The record shows that some States accept for admission purposes an MBE score achieved in another State, and that by use of a "standard reference scale" a "raw score" (that is, the grade received by a specific candidate in a specific examination) may be converted to a so-called "scaled score" (that is, a core designed to represent a fixed level of competence regardless of when an MBE test was taken). We are uninformed as to the precise way in which each such State accepts or permits a candidate to utilize an MBE score achieved in another State at a different time, but, in the view we take, that is immaterial to the issue.

applicants in all States which use the MBE take the same test at about the same time.

The Delaware Examination, which tests for minimum competence to practice law here, *In re Reardon*, Del.Supr., 378 A.2d 614, 617 (1977), provides that all candidates be tested in specified areas of the law, that all take the same Examination at the same time and under the same circumstances during a three-day period. See *BR–52.4.* Assuming that an MBE taken at one time may, by some method, be calibrated or statistically correlated or "scaled" to an MBE taken months later, the fact is that the Examination which Hudson took in Pennsylvania in February 1978 was not the same examination which he and all other candidates took in Delaware in July 1978. And, as the Board argues, fairness requires that all candidates be prepared to address themselves to the entire Examination during the assigned time span. A different rule would, in effect, permit a candidate to concentrate at a different time on one part of the Examination to the exclusion of another. Accepting an MBE score from another State, particularly for the purpose of admitting to practice here in the face of failure to pass an Essay examination on Delaware law, would mean a surrender of our responsibility not only to test a candidate but also to establish the security under which the Examination is given. We decline to do this.

Assuming that under present Rules, the Board had the power to accept the Pennsylvania MBE score, as Hudson argues, its refusal to do so was neither arbitrary nor unfair as to him. Cf. *In re Reardon, supra,* 378 A.2d at 618.

We also note that Hudson asks the Court to change the grading requirements for admission to the practice of law after completion of the Examination, and after the pass/fail determinations by the Board on an anonymous basis, *BR–52.5(a), Petition of W.M.I.*, Del.Supr., 394 A.2d 207, 208 (1978), have been correlated with the names of all candidates who sat for the Examination. That is an additional reason for denying the petition.

Finally, as to Hudson's argument that he is entitled to a hearing, there is no

merit to this. *Tyler v. Vickery*, 5 Cir., 517 F.2d 1089, 1103 (1975), cert. denied, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976).

Affirmed.