394 S.E.2d 757

Bernice B. WEINSTEIN

v.

WEST VIRGINIA BOARD OF LAW EX-
AMINERS, Ross Maruka, Bradley J.
Pyles, G. Charles Hughes, Rebecca A.
Baitty, Sarah Nell Hall, James St. Clair,
and Robert D. Aitcheson.

No. 19651.

Supreme Court of Appeals of
West Virginia.

June 14, 1990.

Dan Schuda, Steptoe & Johnson, Charles Town, for Bernice B. Weinstein.

Jeremy C. McCamic, McCamic & McCamic, Wheeling, for WV Bd. of Law Examiners et al.

MILLER, Justice:

In this original proceeding in mandamus, the relator, Bernice B. Weinstein, seeks to compel the West Virginia Board of Law Examiners (Board) to admit her to practice in this state pursuant to our reciprocity rule, Rule 4.0(b) of the West Virginia Rules for Admission to the Practice of Law. This

rule allows an attorney to be admitted to practice in West Virginia without taking our written bar examination if the applicant has been "lawfully engaged in the active practice of law [in any other state] for five (5) years next preceding his or her application."[1] We conclude that the relator has failed to demonstrate a clear legal right to admission without examination, and we deny the writ prayed for.

The assertions in the relator's petition and exhibits are undisputed. The relator earned her law degree from the University of Buffalo School of Law in 1962 and was admitted to practice in the State of New York on June 25, 1963, after successfully completing the bar examination. She practiced law in New York until December, 1975. The relator subsequently worked as an attorney for the United States Department of Veterans Affairs in the District of Columbia from January, 1976, until her re-

tirement on December 3, 1988. In October 1989, she obtained employment with a law firm in Charles Town, West Virginia.

On or about April 13, 1990, the relator applied to the Board for admission to practice on motion for reciprocity under Rule 4.0(b). By letter dated April 30, 1990, the Board advised the relator that her application had been rejected because she had not actively practiced law for the five-year period immediately preceding her application.[2] The relator subsequently instituted this proceeding.

At issue here is whether the relator's failure to actively practice law during the sixteen-month period between her retirement from the Department of Veterans Affairs in December 1988 and the submission of her application for admission to practice in April 1990,[3] disqualifies her from admission on motion under Rule 4.0(b). The Board apparently contends that this interruption in the relator's profession-

1. Rule 4.0(b) provides:

 "*Reciprocity Requirements.* To be eligible for admission to practice in the State of West Virginia upon the basis of admission in any other state, an applicant must have been lawfully engaged in the active practice of law for five (5) years next preceding his or her application and must have held a valid license to practice law from some state throughout such five year period; and, must demonstrate to the Board that the standards of admission in at least one of the states where he or she was previously admitted were, at the time of the applicant's admission in that state, and are now, substantially equivalent to the standards for admission in West Virginia."

2. In its letter, the Board advised the relator that her "practice was not active for the required five year period." No question has been raised as to whether the relator's previous employment constituted "the active practice of law" within the meaning of the reciprocity rule. *See* Rule 4.0(c). Consequently, it appears that the Board rejected the relator's application solely on the ground that the period of inactivity following her retirement interrupted the continuous period of active practice necessary to entitle her to admission without examination under Rule 4.0(b).

3. The relator implies that the Board should have focused only on the years prior to her employment in West Virginia and should not have considered the time after October, 1989, as part of the period of inactivity. Rule 4.0(b), however, clearly establishes the date of application

as the point at which the Board's inquiry commences.

Nor can the relator rely on her six months of employment here prior to making application as satisfying the "active practice" requirement of Rule 4.0(b). The reciprocity rule clearly contemplates consideration only of the applicant's active practice in another state. To permit the relator to count her West Virginia employment prior to application as active practice would, in the words of the Supreme Court of Arkansas in *Undem v. State Board of Law Examiners,* 266 Ark. 683, 696, 587 S.W.2d 563, 570 (1979),

 "be tantamount to affixing an ex post facto imprimatur of approval on what might be construed as the unauthorized practice of law, and is contrary to the policy expressed by our rule. *See In re Petition of Church,* 111 R.I. 425, 303 A.2d 758 (1973). It was never intended that the requirement … could be met by practice in Arkansas. This could only be done by engaging in the unauthorized practice of law. Such a construction of the rule would result in an absurdity."

*See Salibra v. Supreme Court of Ohio,* 730 F.2d 1059 (6th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984); *In re Huntley,* 424 A.2d 8, 14 A.L.R.4th 1 (Del.1980); *Petition of Olsen,* 112 R.I. 673, 314 A.2d 140 (1974).

Of course, our rules for admission do provide a limited right to practice in certain instances. For example, Rule 4.6 permits resident law professors to practice under certain conditions, Rule 8.0 allows admission *pro hac vice,* and Rule 9.0 permits limited practice in indigent

al career renders her ineligible for admission by reciprocity because the rule requires five continuous years of active practice in another state immediately prior to the filing of the application. The relator asserts that in view of her over twenty-six years of active practice as an attorney in good standing in New York and the District of Columbia, this period of inactivity should not deprive her of the privilege of admission without examination.

We have never had occasion to address this issue. The plain language of the rule, however, requiring "an applicant [to] have been lawfully engaged in the active practice of law for five (5) years next preceding her or her application," would appear to contemplate a continuous five-year period of active practice immediately preceding the filing of the application.

This was the conclusion the Supreme Court of Delaware reached in interpreting a similar reciprocity provision. In the case of *In re Huntley*, 424 A.2d 8, 11, 14 A.L.R. 4th 1, 5 (Del.1980), the court stated:

"The purpose ... of the condition that the applicant has been actively engaged in the practice of law for the preceding five years is to support a presumption ... that such an applicant is competent in the law on the basis of his experience in practice as well as his success in another State's 'full' bar examination."

See *Shapiro v. Cooke*, 552 F.Supp. 581 (N.D.N.Y.1982), *aff'd*, 702 F.2d 46 (2d Cir. 1983); *Lowrie v. Goldenhersh*, 521 F.Supp. 534 (N.D.Ill.1981), *aff'd*, 716 F.2d 401 (7th Cir.1983); *Application of Stormont*, 238 Kan. 627, 712 P.2d 1279 (1986); *Application of R.G.S.*, 312 Md. 626, 541 A.2d 977 (1988); *Goetz v. Harrison*, 154 Mont. 274, 462 P.2d 891 (1969); *Petition of Jackson*, 95 R.I. 393, 187 A.2d 536 (1963); *Lane v. West Virginia State Bd. of Law Examiners*, 170 W.Va. 583, 295 S.E.2d 670 (1982).

In *Petition of Nenno*, 472 A.2d 815, 819–20 (Del.1983), the court added:

"The intent of [the rule] is to allow admission ... only to those persons who come to Delaware with the skills acquired during at least five years in the 'practice of law', a term of art connoting much more than merely working with legally-related matters. To assure that there has been no diminution of those skills, such experience must have been gained in the five years 'next preceding' the application."

See *Petition of Jackson, supra.*

This is not to say, however, that no interruption in an applicant's active practice will be tolerated under the reciprocity rule. In *Lohmeyer v. Maryland State Board of Law Examiners*, 218 Md. 575, 147 A.2d 703 (1959), for example, a Maryland court rule permitted admission without examination if the applicant had been "actively and continuously engaged as a practitioner ... of the law" in another state. The Maryland Court of Appeals recognized that the term "continuously" as used in this rule "should be so construed as to be consistent with the objects and purposes of the rule." 218 Md. at 580, 147 A.2d at 706.

More to the point is the decision of the Supreme Court of Delaware in *Petition of Nenno, supra.* The applicant, Mr. Nenno, had been admitted to the Pennsylvania Bar in 1976 and had practiced law in Philadelphia until March, 1982. On March 22, 1982, he became employed as an attorney at a Wilmington, Delaware bank, but continued to live in Pennsylvania. Because the Delaware rules in effect at the time required applicants for the Bar to be Delaware residents, Mr. Nenno did not immediately apply for admission by limited examination.[4] The rule was subsequently amended on June 30, 1982, to eliminate the residency requirement. On August 5, 1982, Mr. Nenno contacted the Delaware Board of Bar Examiners, but was told that applications would not be available and

---

services or public defender programs under certain conditions.

**4.** The Delaware rule, Del.S.Ct.R. 53, permitted attorneys admitted to practice in other jurisdic-

tions to be admitted to practice in Delaware upon completion of an examination testing only Delaware procedure and legal ethics.

could not be filed until January, 1983. Mr. Nenno filed his application for admission to practice in Delaware on April 22, 1983. By letter dated June 23, 1983, the Board of Bar Examiners rejected the application on the ground that Mr. Nenno had not actively practiced law in another state for the preceding five years, citing the thirteen-month gap between his Philadelphia law practice and his application.

The Delaware court set out the following guidelines for interpreting the admission rules it had promulgated:

> "Our duty in interpreting our rules, like that of statutory construction, is to reject a result producing an unreasonable consequence, and to adopt an interpretation which gives a sensible and practical meaning to the rule and the purpose for which it was intended. Moreover, any rationale must be consonant with the State interest which [the rule] seeks to secure. That interest is to 'protect the public from incompetent and dishonest lawyers, and to assure that those admitted to the Bar possess the requisite attributes of good moral character, learning and ability.' *In re John J. Green, Jr.*, 464 A.2d 881 [(Del.1983)]." 472 A.2d at 819.

The court concluded that Mr. Nenno had been diligent in his efforts to apply for admission to practice in Delaware and had filed his application at the earliest possible opportunity. As a consequence, the court found him qualified under its reciprocity rule.

 We believe that the Delaware court's analysis is applicable to our reciprocity rule as well. Rule 4.0(b) requires an applicant for admission to practice on motion for reciprocity to show that he or she was lawfully engaged in the active practice of law in another state for the five years next preceding the date of applica-tion. Rule 4.0(b) may permit some interruption in the period of practice where the attorney can show substantial diligence in seeking admission to practice in this state on motion for reciprocity.[5]

Here, the relator asserts that her early retirement from government service was unexpected and that she subsequently took some time to evaluate her options for future employment, including the possibility of returning to practice in New York. We are not informed in any detail as to what occurred between the relator's retirement on December 3, 1988, and her employment in West Virginia in October, 1989, although the relator asserts that she sold real estate, worked in a hardware store, and actively sought employment in the legal profession during this period. More importantly, no explanation is offered for her almost six-month delay in seeking admission to practice after she obtained employment in West Virginia.

Upon these facts, we cannot say that the relator has shown the sort of diligence that would warrant compelling the Board to admit her on motion. In Syllabus Point 3 of *Deeds v. Lindsey*, 179 W.Va. 674, 371 S.E.2d 602 (1988), we restated our standard for determining entitlement to mandamus:

> " 'A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of the respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syl. pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969)."

In view of the paucity of the record before us, we cannot say that the relator has demonstrated entitlement to the relief prayed for.

---

**5.** Some states avoid the problem by allowing for interruptions in practice in their rules. In Illinois and New York, for example, the applicant for admission by reciprocity must show that he or she engaged in active practice in another state for five of the preceding seven years. *See* Ill.Ann.Stat. ch. 110A, para. 705(b) (Smith–Hurd 1989); 22 N.Y.C.R.R. § 520.9 (1990). In Rhode Island, the applicant need only have practiced five of the previous ten years. R.I.S.Ct.R. 34 (1990). This type of hiatus would appear to run counter to the rationale for reciprocity, i.e., that because of his or her recent active practice in another state, the applicant is currently qualified as a lawyer.

Although not raised by the Board, we note that the Rules provide an administrative hearing procedure in circumstances such as these. Rule 6.0(a) provides:

"*Request for Hearing.* In the event that the Board determines that an applicant does not meet the requirements of the Rules for Admission to the Practice of Law for any reason, except the failure to pass the bar examination, and the applicant requests a hearing to review the Board's action, a formal hearing is authorized when the applicant requests in writing to the Board a hearing."

Our traditional rule is that where an administrative remedy is provided, relief must ordinarily be sought there before resorting to the courts. As we pointed out in Syllabus Point 1 of *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985):

" ' "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association,* 143 W.Va. 674, 104 S.E.2d 320 (1958).' Syl. pt. 1, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984)."

Such an administrative hearing would give the applicant an opportunity to make a proper factual record to support our review of the Board's findings.[6] We do not envision that such a hearing would be protracted, since many of the facts might be stipulated. Areas of dispute, when they arise, could be fully developed. Such factual de-velopment was not available in this abbreviated mandamus proceeding.

For the reasons stated above, we conclude that the relator is not entitled to the relief sought, and, accordingly, we deny the writ.[7]

Writ denied.

---

6. Rule 6.0(d) provides:

"*Review by Board and Court.* Upon completion of the hearing before the hearing officer, the hearing officer shall make a written recommendation as to the eligibility of the applicant based upon the requirements of these rules and upon the evidence submitted. Such written report, together with a copy of the transcript of the hearing, shall be forwarded as soon as practicable to the Board of Law Examiners. The Board, within forty-five (45) days from the receipt of said written report and the record, shall review the report and shall advise the applicant in writing as to whether he or she has been found eligible to take the bar examination or to be admitted, if examination is not required. In the event that the Board finds that the applicant is not eligible, the applicant may file exceptions to the Board's recommendations. Exceptions shall be filed with the Clerk of the Supreme Court of Appeals within thirty (30) days from the date of the receipt of the Board's written recommendation. If the Court determines that the matter has merit, it shall docket the case for full argument."

7. Although we have denied the relator admission on the basis of reciprocity in this case, nothing precludes her from applying for the bar examination.